# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENDALL D. REESE** | : | **CIVIL ACTION** |
| *Plaintiff, pro se* | : | |
| | : | **NO. 17-4588** |
| **v.** | : | |
| | : | |
| **SOURCE 4 TEACHERS**, | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                         AUGUST 8, 2018

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a *motion to dismiss* filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) by Defendant Source4Teachers ("Defendant"), [ECF 11], which seeks the dismissal of the discrimination claim brought by *pro se* Plaintiff Kendall D. Reese ("Plaintiff") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"). Plaintiff opposes the motion. [ECF 14]. The issues raised in the motion have been fully briefed by the parties,[1] and are now ripe for disposition. For the reasons set forth, Defendant's motion to dismiss is granted. Plaintiff is granted leave to amend the amended complaint.

**BACKGROUND**

On October 13, 2017, Plaintiff initiated this action by filing an application to proceed *in forma pauperis* ("IFP"). [ECF 1]. On October 18, 2017, Plaintiff's IFP application was granted and his complaint was dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim because Plaintiff failed to specifically allege that he is a member of a protected class and failed to support his allegation that Defendant's refusal to hire him was based upon his race. [ECF 2]. Plaintiff was given thirty days to amend his complaint to include facts necessary to his

---
[1] In considering the motion to dismiss, this Court has also considered Defendant's reply. [ECF 15].

purported claim. [Id. at ¶ 3]. On November 17, 2018, Plaintiff filed an amended complaint. [ECF 5]. In the amended complaint, Plaintiff again asserts a race and/or gender discrimination claim pursuant to Title VII based on Defendant's failure to hire him after discovering he had a prior felony conviction. [*Id.* at 1-3].

Defendant moves to dismiss the amended complaint on the basis that (1) all hiring decisions are based on Pennsylvania state law which prohibits persons with certain felony convictions from being employed as, *inter alia*, school teachers; and (2) Plaintiff failed to allege sufficient facts to raise a reasonable expectation that discovery will reveal the necessary elements of a Title VII discrimination claim. [ECF 11-3 at 5-9]. Plaintiff opposes these contentions and argues that Defendant's decision to not hire individuals with drug convictions has a disparate impact on African American men. [ECF 14 at 1-2].

When ruling on Defendant's motion to dismiss, this Court must accept, as true, all relevant and pertinent factual allegations in the amended complaint and construe these facts in the light most favorable to Plaintiff. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Notably, Plaintiff's amended complaint contains scant factual allegations pertaining to Defendant's employment decision and, instead, focuses almost exclusively on the impact that controlled substance laws have on African American men. [ECF 5 at 1-6]. Plaintiff proffers a statistical argument that significantly more African American men are convicted of drug crimes, causing a disparate impact on employment and employment opportunities. [*Id.*]. Plaintiff argues that Defendant "had the opportunity to put a well-qualified and much needed individual in [a] position but decided to be covert in its mission to consciously or unconsciously help discriminate against African American males." [*Id.* at 2]. Plaintiff alleges that Defendant decided to not hire him as a teacher based upon his felony conviction, a decision Plaintiff contends was knowingly or unknowingly discriminatory.

2

[*Id.* at 3, 6]. In his response, Plaintiff also alleges additional facts, *to wit*: that his controlled substance arrest occurred twenty-seven years ago, and that on November 20, 2015, Defendant informed him that its legal department had determined he could not be hired because of this previous felony conviction. [ECF 14 at 2-3].

**LEGAL STANDARD**

A court may grant a motion to dismiss an action under Rule 12(b)(6) if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted).

To determine the sufficiency of a complaint, "a court . . . must take three steps," *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *to wit*: a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth;" and (3) assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 675, 679). While a complaint need not assert detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

A court may determine that a complaint's factual allegations are plausible if the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "But

3

where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Thus, to survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 570). "Although the plausibility standard 'does not impose a probability requirement,' it does require a pleading to show 'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (citations omitted). Reviewing the plausibility of the complaint is a "context-specific" inquiry and requires a court to "draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64. While this Court must construe the pleadings of a *pro se* party liberally, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

**DISCUSSION**

As noted, Defendant argues that Plaintiff fails to state a claim for Title VII discrimination because: (1) Defendant's hiring decision was based on a Pennsylvania state law that prohibits persons with certain felony convictions from being employed as teachers; and (2) Plaintiff failed to allege sufficient facts to state a Title VII discrimination claim. [ECF 11-3 at 5-9]. These arguments will be addressed in turn.

*Pennsylvania Law Prohibits Hiring Plaintiff*

In his amended complaint, Plaintiff avers a discrimination claim premised on Defendant's refusal to hire individuals, such as Plaintiff, who have felony drug convictions; a policy that

4

disparately impacts African American men.[2] "Disparate impact discrimination is a brand of 'unintentional discrimination,' whereby an employer adopts certain practices that are 'facially neutral in their treatment of different groups' but 'in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Byrd v. City of Philadelphia*, 2013 WL 5728669, at *3 (E.D. Pa. Oct. 22, 2013) (quoting *Raytheon Co. v. Hernandez,* 540 U.S. 44, 52 (2003)). To prove a claim for disparate impact

> a complaining party [must] demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent [must] fail[] to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity . . . .

42 U.S.C. § 2000e-2(k)(1)(A)(i). At the pleading stage, however, a plaintiff need only plead that

---

[2] While the United States Court of Appeals for the Third Circuit Court has yet to address whether claims premised upon a combination of protected classes, such as this one, are cognizable, in a case where the plaintiff alleged he was discriminated against because he was a man of Italian ancestry, a federal court in the Eastern District of Pennsylvania held that a "Title VII claim may be premised on alleged discrimination based on a combination of impermissible factors." *Fucci v. Graduate Hosp.*, 969 F. Supp. 310, 316 n.9 (E.D. Pa. 1997) (internal citations omitted); *see also Kost v. Dep't of Pub. Welfare*, 2011 WL 6301956, at *7 (E.D. Pa. Dec. 16, 2011) (holding that Title VII claim "may be based on a combination of impermissible factors."); *DiBartolo v. City of Philadelphia*, 2000 WL 217746, at *9 (E.D. Pa. Feb. 15, 2000) ("A Title VII claim may be based on a combination of impermissible factors, like race and gender."). Other courts have likewise found intersectional claims to be cognizable under Title VII. *See Shazor v. Prof'l Transit Mgmt., Ltd.*, 744 F.3d 948, 958 (6th Cir. 2014) ("[B]oth classifications—race and sex—are protected by Title VII. These characteristics do not exist in isolation. African American women are subjected to unique stereotypes that neither African American men nor white women must endure. And Title VII does not permit plaintiffs to fall between two stools when their claim rests on multiple protected grounds.") (internal citations omitted); *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1562 (9th Cir. 1994) ("[W]hen a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors, not just whether it discriminates against people of the same race or of the same sex."); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987) ("Title VII prohibits an employer from discriminating against any individual because of race or because of sex. The use of the word 'or' evidences Congress' intent to prohibit employment discrimination based on any or all of the listed characteristics.") (internal quotations omitted); *Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) (finding a claim that someone was discriminated against for being an African American woman was separately cognizable from claims of solely race or gender discrimination, noting that the "use of the word 'or' [in Title VII] evidences Congress' intent to prohibit employment discrimination based on any or all of the listed characteristics."). Here, because this Court concludes that Plaintiff is entitled to amend his complaint to more fully allege his Title VII claims, this Court need not determine, at this time, whether a combined race/gender discrimination claim is cognizable under Title VII.

a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VII to which the plaintiff belongs. *See Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 523 (E.D. Pa. 2006); *Lit v. Infinity Broad. Corp. of Pa., a Div. of Viacom*, 2005 WL 3088364, at *4 (E.D. Pa. Nov. 16, 2005).

Defendant argues that its refusal to hire individuals with certain felony convictions is not a "practice" and/or "policy" but, rather, it is a requirement of Pennsylvania law. [ECF 11-3 at 7-9]. Thus, Defendant contends that it cannot be held to have instituted or applied a facially neutral, yet discriminatory, practice and/or policy. [*Id.*]. This Court disagrees.

Section 1-111 of the Pennsylvania Public School Code of 1949 applies to "all current and prospective employes of public and private schools, intermediate units and area vocational-technical schools, including, but not limited to, teachers, substitutes, janitors, cafeteria workers, independent contractors and their employes . . . ." 24 Pa. Cons. Stat. § 1-111(a.1). Those persons covered by this section who are convicted of certain enumerated offenses may not "be employed or remain employed in a public or private school, intermediate unit or area vocational-technical school . . . ." 24 Pa. Cons. Stat. § 1-111(e). Included in those enumerated offenses are any "offense[s] designated as a felony under the act of April 14, 1972 (P.L. 233, No. 64), known as 'The Controlled Substance, Drug, Device and Cosmetic Act.'" 24 Pa. Cons. Stat. § 1-111(e)(2). Plaintiff does not dispute that he was convicted of a controlled substance violation twenty-seven years ago. [ECF 5 at 1-2].[3] In light of this admission, Plaintiff is subject to the hiring prohibition established by § 1-111(e).

---

[3] Defendant asserts that Plaintiff's criminal background check revealed a felony conviction under Section 780-113(a)(30) of the Controlled Substance, Drug, Device and Cosmetic Act, [ECF 11-3 at 8; ECF 11-5 at 50-51], which prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 Pa. Cons. Stat. § 780-113(a)(30). Plaintiff does not dispute this assertion.

Notwithstanding the applicability of § 1-111(e), Plaintiff argues that Defendant's "practice" of complying with § 1-111(e) constitutes discrimination. Defendant disagrees and relies on the provision of § 1-111 that reads as follows: an "administrator, or other person responsible for employment decisions in a school or other institution under this section who willfully [*sic*] fails to comply with the provisions of this section commits a violation of this act and shall be subject to civil penalty as provided in this section." 24 Pa. Cons. Stat. § 1-111(g). Accordingly, Defendant contends that its refusal to hire individuals convicted of violating the Controlled Substance, Drug, Device and Cosmetic Act is a requirement of state law, not a "facially neutral practice" that subjects it to disparate impact liability. [ECF 11-3 at 7-9]. Defendant's reliance on this state law provision for this argument, however, is misplaced.

Section 2000e-7 of Title VII addresses the effect of federal discrimination laws effect on state laws; *to wit*:

> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, *other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter*.

42 U.S.C. § 2000e-7 (emphasis added). The impact of this provision has been interpreted to "relieve[] employers from any duty to observe a state hiring provision 'which purports to require or permit' any discriminatory employment practice." *Guardians Ass'n of New York City Police Dep't, Inc. v. Civil Serv. Comm'n of City of New York*, 630 F.2d 79, 105 (2d Cir. 1980) (quoting 42 U.S.C. § 2000e-7); *see also Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 380 (2d Cir. 2006) (holding that "the mandates of state law are no defense to Title VII liability.").

Relevant to this analysis is the Equal Employment Opportunity Commission ("EEOC") "Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment

Decisions Under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq*." 2012 WL 1499883. Within these guidelines, the EEOC made clear that:

> States and local jurisdictions also have laws and/or regulations that restrict or prohibit the employment of individuals with records of certain criminal conduct. Unlike federal laws or regulations, however, state and local laws or regulations are preempted by Title VII if they "purport[] to require or permit the doing of any act which would be an unlawful employment practice" under Title VII. *Therefore, if an employer's exclusionary policy or practice is not job related and consistent with business necessity, the fact that it was adopted to comply with a state or local law or regulation does not shield the employer from Title VII liability*.

*Id.* at *22 (emphasis added).

This Court also finds instructive the United States District Court for the Southern District of Ohio's decision in *Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884 (S.D. Ohio 2013). The *Waldon* Court addressed a Title VII challenge to the termination of two Cincinnati Public School District employees based on Ohio's enactment in 2007 of a law which required the termination of current school employees if the "employee had been convicted of any of a number of specified crimes, no matter how far in the past they occurred, nor how little they related to the employee's present qualifications." *Waldon*, 941 F. Supp. 2d at 886. The plaintiffs brought claims for Title VII discrimination, "arguing their terminations were based on state legislation that had a racially discriminatory impact." *Id.* The school district moved to dismiss the complaint on the grounds that the plaintiffs failed to state a claim because "it maintained no particular employment practice that caused a disparate impact, and that it was a business necessity for it to follow Ohio law." *Id.* The school district further argued that if the case was not dismissed, it would "be in the position of defending a criminal records policy it had no role in creating," and that "it had no way of knowing whether the facially-neutral criminal records requirement resulted in a statewide disparate impact." *Id.* The *Waldon* Court disagreed, finding

8

"no question that Plaintiffs have adequately plead[ed] a case of disparate impact." *Id.* at 888. The *Waldon* Court went on to provide that:

> Although there appears to be no question that Defendant did not intend to discriminate, intent is irrelevant and the practice that it implemented allegedly had a greater impact on African–Americans than others. The Court rejects Defendant's view that the state law must "purport" to discriminate in order to be trumped by Title VII. Such a view would gut the purpose of Title VII, and would run contrary to *Griggs* [*v. Duke Power Co.,* 401 U.S. 424 (1971)]*,* as well as subsequent authorities in which state mandates were challenged. *Palmer v. General Mills,* 513 F.2d 1040 (6th Cir. 1975), *Gulino v. New York State Educ. Dept.,* 460 F.3d 361, 380 (2d Cir. 2006). Where, as alleged here, a facially-neutral employment practice has a disparate impact, then Plaintiffs have alleged a *prima facie* case.

*Id.* The *Waldon* Court went on to hold that it could not conclude as a matter of law that compliance with the state mandate constituted a business necessity, especially where the defendant knew that its compliance resulted in terminating ten employees of which nine were African American. *Id.* at 890.

As in the *Waldon* matter, Defendant here seeks to rely upon a state mandate to avoid Title VII liability. Based on the EEOC guidance as to Title VII's preemptive effect on state laws that have a discriminatory disparate impact, and the persuasive reasoning set forth in *Waldon*, *Guardians*, and *Gulino*, this Court concludes that Defendant's strict compliance with § 1-111(e), in and of itself, is insufficient to shield it from Title VII liability. Accordingly, the motion to dismiss on this ground is denied.[4]

---

[4] In his response to the motion to dismiss, Plaintiff cites to *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10 (Pa. Commw. Ct. 2012), for the proposition that school entities should apply § 1-111(e) on a case-by-case basis. [ECF 14 at 2]. Plaintiff, however, misinterprets *Johnson*. In *Johnson*, the Commonwealth Court of Pennsylvania considered § 1-111(e)'s lifetime employment ban as applied to a school counselor convicted of felony voluntary manslaughter twenty-five years prior. *Johnson v. Allegheny Intermediate Unit,* 59 A.3d 10, 13 (Pa. Commw. Ct. 2012). In that action, the plaintiff filed a civil action seeking a declaration that the defendant's termination of his employment pursuant to § 1-111(e) violated his due process rights under the Pennsylvania Constitution. *Id.* at *15. The *Johnson*

## *Failure to State a Claim*

Defendant argues that Plaintiff has failed to state a claim for Title VII discrimination because Plaintiff has not alleged that he is a member of a protected group. [ECF 11-3 at 5-7]. Defendant is correct. As noted *supra*, at the pleading stage for a claim of disparate impact discrimination, a plaintiff need only plead that a facially neutral practice's adverse effects fall disproportionately on a group protected by Title VII to which the plaintiff belongs. *See Ladd*, 463 F. Supp. 2d at 523; *Lit*, 2005 WL 3088364, at *4. As with his initial complaint, Plaintiff does not explicitly allege in his amended complaint that he is an African American man, the protected group Plaintiff alleges is being disparately impacted by Defendant's policy of compliance with § 1-111(e). Notably, in his response to the motion to dismiss, Plaintiff does state that he is an "African American Male." [ECF 14 at ¶ 1]. However, "a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion" to dismiss. *Cherry v. City of Philadelphia*, 2004 WL 2600684, at *3 (E.D. Pa. Nov. 15, 2004); *see also Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

---

Court considered this "as-applied" constitutional challenge, and ultimately determined § 1-111(e) violated the plaintiff's substantive due process rights provided by that Article 1, Section 1 of the Pennsylvania Constitution, which "guarantees [] an individual's right to engage in any of the common occupations of life." *Id.* at *20, *25. In doing so, the *Johnson* Court concluded that there was no rational basis to apply § 1-111(e)'s lifetime employment ban on the basis of a conviction such as the plaintiff's where the conviction had "no temporal proximity to [the plaintiff's] present ability to perform the duties of his position [and did] not bear a real and substantial relationship to the Commonwealth's interest in protecting children . . . ." *Id.* at *25. The *Johnson* Court did not state that § 1-111(e) must generally be applied on a case-by-case basis, as argued by Plaintiff, or that it was facially unconstitutional under the Pennsylvania Constitution.

In this case, unlike the plaintiff in *Johnson*, Plaintiff does not seek a declaration that § 1-111(e), as applied to him, violates the Pennsylvania Constitution. In fact, Plaintiff did not assert *any* constitutional claims as to § 1-111(e). Instead, Plaintiff only asserts that Defendant's refusal to hire him in compliance with § 1-111(e) constitutes unlawful discrimination in violation of Title VII. Therefore, this Court will not consider whether § 1-111(e), as applied to Plaintiff, violates the Pennsylvania Constitution.

Accordingly, after a careful review of the amended complaint, this Court finds that Plaintiff has failed to allege sufficient facts, *i.e.*, that he is a member of a protected class, to state a claim of race/gender discrimination. For this reason, Defendant's motion to dismiss is granted.

## *Leave to Amend*

In civil rights cases, district courts must consider allowing a plaintiff to amend when dismissing a case for failure to state a claim "unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."). Within this district, some courts have extended this amendment practice to claims brought under Title VII. *See, e.g.*, *Eldeeb v. Potter*, 675 F. Supp. 2d 521, 524 (E.D. Pa. 2009) (recognizing the plaintiff's right to amend and allowing the plaintiff, who was alleging a Title VII hostile work environment claim, to amend his complaint). Because this Court cannot conclude, under the circumstances, that an amendment would be either futile or inequitable, Plaintiff is given leave to file a second amended complaint to address the noted deficiencies.

**CONCLUSION**

For the reasons stated herein, Defendant's motion to dismiss is granted, with leave to amend. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.