**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KENDALL D. REESE** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 17-4588** |
| | : | |
| **SOURCE 4 TEACHERS** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    SEPTEMBER 29, 2021

# MEMORANDUM OPINION

## INTRODUCTION

Plaintiff Kendall D. Reese ("Plaintiff") initially filed a *pro se* civil action against Defendant Source 4 Teachers ("Defendant"), purporting to assert a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), based on his contention that Defendant's failure to hire him as a substitute teacher was discriminatory.  [ECF 3, 5].  Subsequently, Defendant's motion to dismiss was granted, without prejudice, under Federal Rule of Civil Procedure ("Rule") 12(b)(6), with leave to amend.  [ECF 17].  With the assistance of counsel, Plaintiff filed a second amended complaint (the "operative complaint") pursuant to "Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, the First, Fifth, and Fourteenth Amendments to the United States Constitution, [and] other constitutional provisions and federal and state statutes," seeking declaratory and injunctive relief, compensatory damages, and punitive damages against Defendant for the alleged violations of his rights guaranteed under the laws of the United States, and for personal and other injuries in violation of laws of the Commonwealth of Pennsylvania.  [ECF 26].

Before this Court are Defendant's motion for summary judgment filed pursuant to Rule 56, [ECF 68], Plaintiff's response in opposition, [ECF 71], and Defendant's reply, [ECF 72].  The

issues raised in the motion are fully briefed and ripe for disposition.  For the reasons set forth herein, Defendant's motion is granted, and judgment is entered in favor of Defendant on all of Plaintiff's claims.

**BACKGROUND**

Plaintiff claims that Defendant discriminated against him on the basis of his race. Specifically, Plaintiff contends that Defendant refused to hire him as a substitute teacher pursuant to a Pennsylvania statute, 24 Pa. Cons. Stat. § 1-111(e), which he argues has a disparate, discriminatory impact on African American men.  This statute disqualifies individuals with certain criminal convictions from employment at a public or private school.  Defendant moves for summary judgment on the basis that Plaintiff has failed to present evidence sufficient to meet his burden.

When evaluating a motion for summary judgment, a court must consider all record evidence and relevant facts in the light most favorable to the nonmoving party—here, Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  The facts relevant to this motion are summarized as follows:[1]

> Plaintiff is an African American male with a master's degree.  Defendant is a private, for-profit company that provides substitute teacher staffing services to various educational institutions across the country.  On October 26, 2015, Plaintiff applied for a substitute teacher position with Defendant.  The employment application process included agreeing to a criminal background check.  Along with the application, Plaintiff also completed an Arrest/Conviction Report and Certification Form, in which he indicated that he had never been arrested or convicted of a reportable offense.
>
> Defendant conducted a background check of Plaintiff, which included reports from the Pennsylvania State Police and the Federal Bureau of Investigation. These reports revealed that Plaintiff had been convicted of felony offenses in 1990

---

[1]      These facts are taken from the parties' briefs, exhibits, and statements of facts.  To the extent that any evidence is disputed, such disputes will be noted and construed in the light most favorable to Plaintiff. *Galena*, 638 U.S. at 196.

and 1991 involving robbery and drug crimes committed in 1985 and 1988. For each of those convictions, he was sentenced to a term of 11½ to 23 months incarceration.

On November 20, 2015, Defendant sent Plaintiff an email with the subject line, "Re: Ineligible for Employment," with the following message:

> Our legal department has determined you ineligible for hire based on previous felony conviction(s) detailed in your FBI Clearance Letter and or PA State Police Record Check. Unfortunately, we will not be able to continue with your application. Any felony conviction(s) results in the immediate disqualification from the application process.

Defendant did not hire Plaintiff as a substitute teacher.

## LEGAL STANDARD

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Under Rule 56, a court must view the evidence in the light most favorable to the nonmoving party—here, Plaintiff. *Galena*, 638 F.3d at 196.

Under Rule 56(c), the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular parts of materials

in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations and citations omitted).

**DISCUSSION**

In this employment action, Plaintiff's main contention is that Defendant violated Title VII, the Pennsylvania Human Relations Act ("PHRA"), 42 U.S.C. § 1981, and other federal statutes when it discriminatorily rejected, on the basis of his race, his application for employment as a substitute teacher. Plaintiff also asserts claims against Defendant under 42 U.S.C. §§ 1983, 1985, 1986, and 1988. These claims will be addressed separately.

**I.    Plaintiff's Race Discrimination Claims**

Defendant moves for summary judgment on Plaintiff's race discrimination claims brought pursuant to Title VII, the PHRA, and § 1981, arguing that Plaintiff has not presented sufficient evidence from which a reasonable factfinder could find in his favor. This Court agrees.

Title VII and the PHRA prohibit employers from discriminating against candidates for employment on the basis of race.  42 U.S.C. § 2000e-2(a)(1);[2] 43 Pa. Cons. Stat. § 955(a);[3] *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318 (3d Cir. 2000).  A claim under § 1981[4] generally requires the same elements as an employment discrimination claim under Title VII, but "is limited to issues of racial discrimination in the making and enforcing of contracts."  *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010).  Claims brought under Title VII, the PHRA, and § 1981 are generally analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *Anderson*, 621 F.3d at 267–68 ("[T]he burden-shifting framework introduced by *McDonnell Douglas* . . . may be used to determine whether an employer has discriminated against a plaintiff in violation of § 1981."); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) ("[D]isparate treatment claims under Title VII, section 1981, and the PHRA require application of the familiar burden-shifting framework the Supreme Court articulated in *McDonnell Douglas* . . . ."); *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 212 n.2 (3d Cir. 2011) ("Claims arising under the PHRA are governed by the same

---

[2]      Title VII makes it unlawful for an employer "to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(1).

[3]      The PHRA makes it unlawful for an employer to, because of an individual's race, "refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract . . . ."  43 Pa. Cons. Stat. § 955(a).

[4]      In relevant part, § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a).

standards set forth in Title VII for determining summary judgment motions."). Further, § 1981 claims also require the plaintiff to show that race was the but-for cause of the adverse employment action taken against the plaintiff by the defendant. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, — U.S. —, 140 S. Ct. 1009, 1014–15 (2020).

Title VII employment discrimination claims can be brought under the indirect evidence burden-shifting framework set forth in *McDonnell Douglas,* 411 U.S. at 802, or the "mixed-motive" theory introduced in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *See Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008). A plaintiff may also claim employment discrimination on a theory of "disparate impact," which requires a showing that a facially neutral employment policy of the defendant disproportionately affected a protected class. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971). Here, it is unclear from the pleadings under which theory Plaintiff brings his claims against Defendant. Therefore, this Court will address each theory in turn.

### *Intentional Race Discrimination*

Claims of intentional discrimination or disparate treatment are generally analyzed under the *McDonnell Douglas* framework. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Under this framework, the plaintiff must first establish by a preponderance of the evidence a *prima facie* case of employment discrimination by producing evidence to show that the plaintiff: (1) belongs to a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) that, under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position. *McDonnell Douglas*, 411 U.S. at 802; *Walker v. Centocor Ortho Biotech, Inc*., 558 F. App'x 216, 218 (3d Cir. 2014) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)). The "central focus" of the *prima facie* case "is always whether the employer is treating

6

'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

Once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the *prima facia* showing by "articulat[ing] some legitimate, nondiscriminatory reason" for its action, *i.e.*, for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this phase, the burden shifts back to the plaintiff to prove that the legitimate reason(s) offered by the defendant are merely a pretext for discrimination, and not the real motivation for the unfavorable job action. *Id.* at 804–05. To make a showing of pretext, the plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To meet this burden, the plaintiff must "present evidence contradicting the core facts put forth by the employer, as the legitimate reasons for its decision." *Kautz v. Met-Pro Corp*., 412 F.3d 463, 467 (3d Cir. 2005). The plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765. *Fuentes* further requires the plaintiff to present evidence that suggests that the alleged unlawful discrimination was more likely than not a motivating or determining factor in the defendant's adverse employment actions. That is, the plaintiff must do more than show that the defendant's proffered reasons were wrong or mistaken; the plaintiff must demonstrate that the defendant acted with discriminatory animus. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001). The plaintiff can

meet this burden by pointing to evidence "that the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's protected class or within another class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998).

Here, Plaintiff has failed to make a *prima facie* case of race discrimination. The parties do not dispute that Plaintiff, as an African American male, is a member of a protected class or that he suffered an adverse employment action when not hired. Plaintiff, however, cannot establish that he was qualified or eligible for the substitute teacher position for which he applied. That is because under Pennsylvania law,[5] Defendant was statutorily prohibited from hiring any individual who has been convicted of certain crimes, including a felony offense under the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa. Cons. Stat. § 780-101 *et seq.* Plaintiff cannot and does not dispute that he was convicted of a drug felony offense, a conviction that disqualifies him from consideration to be a substitute teacher. As Defendant argues and Plaintiff concedes, he was not hired because of this drug felony conviction. There is no evidence that race factored into the decision to reject Plaintiff's employment application.

---

[5]      In relevant part, 24 Pa. Cons. Stat. § 1-111(e) provides:

> No person subject to this act shall be employed or remain employed in a public or private school, intermediate unit or area career and technical school where a report of criminal history record information or a form submitted by an employe under subsection (j) indicates the person has been convicted of any of the following offenses: . . . (2) An offense designated as a felony under the act of April 14, 1972 (P.L. 233, No. 64),[1] known as "The Controlled Substance, Drug, Device and Cosmetic Act."

(internal citation omitted).

Even assuming, *arguendo*, that Plaintiff was qualified for the position and can establish a *prima facie* case, his claim of intentional discrimination still fails based on the evidence presented. Defendant argues it did not reject Plaintiff's application for a substitute teacher position because of his race, but rather because Defendant was statutorily prohibited from hiring him due to his previous drug felony conviction. *See* 24 Pa. Cons. Stat. § 1-111(e). Defendant has, thus, met its burden of articulating a legitimate, non-discriminatory reason for not hiring Plaintiff. *McDonnell Douglas*, 411 U.S. at 804. As Defendant has met its burden, Plaintiff must now demonstrate that Defendant's proffered reason is pretextual. *Id.* Plaintiff has failed to do so. Plaintiff offers no evidence from which a reasonable factfinder could either disbelieve that Defendant rejected Plaintiff's application because of the statutory bar, or believe that racial prejudice was "more likely than not" a motivating factor in Defendant's decision. *See Fuentes*, 32 F.3d at 764. The only evidence Plaintiff provides is an email from Defendant stating that his criminal record made him "ineligible" for the substitute teacher position. [Pl.'s Br., ECF 71, at p. 5]. Absent additional evidence, the email does not provide any reason to doubt Defendant's veracity, nor does it suggest that race was a motivating factor in the rejection of Plaintiff's application. To the contrary, it supports Defendant's articulated legitimate reason for not hiring him.

As Plaintiff has not demonstrated intentional race discrimination under the *McDonnell Douglas* framework, Defendant is entitled to judgment on Plaintiff's Title VII and PHRA claims of intentional race discrimination as a matter of law. Plaintiff has also not shown, through email or any other evidence, that race was the but-for cause of Defendant's failure to hire him. Since a reasonable factfinder could not find in Plaintiff's favor on his § 1981 claim, Defendant is also entitled to judgment on this § 1981 claim. *See Comcast Corp.*, 140 S. Ct. at 1014–15.

### Mixed-Motive Discrimination

As noted, a plaintiff may bring a Title VII claim under the "mixed-motive" theory, "under which a plaintiff may show that an employment decision was made based on both legitimate and illegitimate reasons." *Makky*, 541 F.3d at 213. Title VII protects against unlawful employment practices where "race . . . was a motivating factor" in the decision. 42 U.S.C. § 2000e-2(m). The plaintiff must first show that an illegitimate criterion was a "substantial factor" in the defendant's employment decision. *Tolan v. Temple Health Sys. Transp. Team, Inc.*, 557 F. App'x 132, 138 (3d Cir. 2014) (citing *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 182 (3d Cir. 2009)). The plaintiff can satisfy the "substantial factor" burden with "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race . . . was a motivating factor for any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (internal quotation marks omitted).[6] When the plaintiff has made a showing that a protected trait was a "substantial factor" in the defendant's decision, the burden shifts to the defendant to show it is "more likely than not" that the defendant would have taken the same action in the absence of the illegitimate motivating factor. *Brown*, 581 F.3d at 182.[7]

Here, Plaintiff offers neither direct nor circumstantial evidence to suggest that his race was a "motivating" or "substantial" factor in Defendant's decision not to hire him. Again, the only

---

[6]        As noted in *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 n.2 (3d Cir. 2002), courts have often referred to "mixed-motive" and "direct evidence" employment discrimination claims interchangeably. However, as the Third Circuit explained in *Makky*, the Supreme Court has clarified that a plaintiff may use either direct or circumstantial evidence to proceed on a mixed-motive Title VII claim. *Makky*, 541 F.3d at 214 (citing *Desert Palace*, 539 U.S. at 92).

[7]        The Third Circuit has held that a mixed-motive claim also fails where the plaintiff does not meet the qualification prong of the *prima facie* test under *McDonnell Douglas*. *See Makky*, 541 F.3d at 215 ("[A] mixed-motive plaintiff has failed to establish a prima facie case of a Title VII employment discrimination claim if there is unchallenged objective evidence that s/he did not possess the minimal qualifications for the position plaintiff sought to obtain or retain."). Plaintiff does not dispute that he was statutorily disqualified from the substitute teacher position. Thus, Plaintiff cannot prevail on his Title VII claim premised on a mixed-motive theory.

evidence Plaintiff provides is an email from Defendant explicitly stating that Plaintiff was "ineligible for hire based on previous felony conviction(s)." [Pl.'s Br., ECF 71, at p. 5]. Without any other evidence supporting the contention that Defendant was motivated to reject Plaintiff's application because of his race, Plaintiff's argument to that end is "pure speculation." *See Selvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016) (affirming grant of summary judgment on mixed-motive sex discrimination claim where the plaintiff provided "no evidence" that her employers "weighed gender-related considerations against her in their decision"). Accordingly, Plaintiff cannot prevail on his employment discrimination claim under a mixed-motive theory.

### *Disparate Impact*

Finally, a plaintiff alleging employment discrimination under Title VII may claim that the defendant's action, while neutral on its face, had a disparate impact on a protected class. *See Stagi v. Nat'l R.R. Passenger Corp.*, 391 F. App'x 133, 136 (3d Cir. 2010). A *prima facie* case of disparate impact discrimination requires the plaintiff to show that the defendant employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i); *see also Ricci v. DeStefano*, 557 U.S. 557, 578 (2009) (explaining that § 2000e-2(k)(1)(A)(i) was enacted in 1991 to codify the approach established by the Supreme Court in *Griggs*, 401 U.S. 424). The Supreme Court has made clear that "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005). The plaintiff must provide proof that the policy or practice in question has had a disproportionate impact on the workforce of the defendant. *Equal Emp. Opportunity Comm'n v. Greyhound Lines, Inc.*, 635 F.2d 188, 192 (3d Cir. 1980). That is, "there can be no disparate impact unless there is a disparate impact." *Id.*

In his operative complaint, Plaintiff alleges that Defendant "has a custom, policy and practice of refusing to [hire] African-American men with criminal convictions that has a disparate impact upon African-American men." [Am. Compl., ECF 26, at p. 4]. He claims that African American men with felony convictions are "routinely subjected to unlawful and discriminatory employment practices by employers such as Defendant." [*Id.* at p. 3]. However, Plaintiff provides no evidence to support his claims beyond the bare allegations contained in his operative complaint. Furthermore, Plaintiff makes no attempt to explicitly connect Defendant's alleged "custom, policy and practice" with the state statute barring the employment of individuals, such as Plaintiff with certain felony convictions, or to challenge the constitutionality of the statute itself.[8] Allegations of a disproportionate effect alone are insufficient to establish a *prima facie* case of disparate impact discrimination. *See Smith*, 544 U.S. at 241; *see also Celotex*, 477 U.S. at 324 (requiring a plaintiff to go beyond the pleadings and present evidence in order to survive a motion for summary judgment). Under these circumstances, Plaintiff cannot succeed on his race discrimination claim under a disparate impact theory.[9]

---

[8]    Plaintiff has expressly stated that "this case should be decided without the Court giving any consideration to the constitutionality" of 24 Pa. Cons. Stat. § 1-111(e)(2). [Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss, ECF 32, at p. 5]. Although not appearing as part of his legal arguments, Plaintiff does contend that Defendant "has wrongly incorporated and applied an *ex post facto* state law in its hiring decision of [Plaintiff] because his crimes and convictions occurred prior to the adoption" of § 1-111(e)(2). [Am. Compl., ECF 26, ¶ 16]; [Pl.'s Br., ECF 71, at p. 4]. However, Pennsylvania courts have rejected similar argument with respect to the specific statutory provision at issue here. *See Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10, 20 (Pa. Commw. Ct. 2012) (reversing trial court's decision holding that § 1-111(e)(2) violated the *Ex Post Facto* Clause of the Pennsylvania Constitution).

[9]    Notably, the United States District Court for the Southern District of Ohio has looked favorably upon a claim similar to Plaintiff's, premised on the argument that terminating employees who had been convicted of certain crimes constituted race discrimination under a disparate impact theory. *Waldon v. Cincinnati Pub. Sch.*, 941 F. Supp. 2d 884 (S.D. Ohio 2013). In that case, a state statute prohibited the defendant from employing individuals with certain criminal convictions. *Id.* at 886. In denying the defendant's motion to dismiss, the *Waldon* court explained that the defendant's policy did not, as a matter of law, constitute a "business necessity," especially given the remoteness in time of the plaintiffs' prior convictions (multiple decades) and the plaintiff's "demonstrated decades of good performance." *Id.* at 889–

## II.    Plaintiff's 42 U.S.C. §§ 1983, 1985, and 1986 Claims

Plaintiff also asserts claims against Defendant under 42 U.S.C. §§ 1983, 1985, and 1986 related to Defendant's failure to hire him.[10]  Defendant moves for summary judgment on the basis that Plaintiff has failed to present sufficient evidence supporting these claims.  This Court agrees.

### *§ 1983 – Deprivation of Civil Rights*

Plaintiff alleges claims of race discrimination and failure to train/supervise under 42 U.S.C. § 1983.  Section 1983 provides a remedy for the deprivation of rights protected by the United States Constitution or federal law.  *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004).[11]  As a threshold matter, for a claim under § 1983 against a private entity to be viable, the plaintiff must show that the defendant acted under color of state law in depriving the plaintiff of civil rights. *West v. Atkins*, 487 U.S. 42, 48 (1988).  This determination of state action depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *see also Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 657–58 (E.D. Pa.

---

90. The court later granted the defendant's motion for summary judgment, however, because the plaintiffs had offered evidence of a disparate impact on the *defendant's* workforce, rather than on the workforce statewide. 89 F. Supp. 3d 944, 949 (S.D. Ohio 2015).  Here, it bears repeating that Plaintiff has presented no evidence of any disparate impact.

[10]    At Counts I–III, Plaintiff also purports to seek an award of attorney's fees pursuant to 42 U.S.C. § 1988.  This statute provides that "the prevailing party" in an action under, *inter alia*, §§ 1981, 1983, 1985, and 1986 may be entitled to reasonable attorney's fees. 42 U.S.C. § 1988(b).  Here, because Plaintiff is not a "prevailing party," he is not entitled to attorney's fees.

[11]    Although Plaintiff mentions the First, Fifth, and Fourteenth Amendments in the jurisdictional statement of his operative complaint, [Am. Compl, ECF 26, ¶ 1], he does not articulate in either his complaint or his opposition brief on which of these particular constitutional amendments he bases his § 1983 claims.  Nor does Plaintiff point to any evidence to substantiate any violation of any of these amendments.  Regardless, Plaintiff has not met the threshold issue of demonstrating that Defendant acted under color of state law.  As such, this Court will not address these additional failings.

2020).  The United States Court of Appeals for the Third Circuit (the "Third Circuit") formulated three tests to determine whether a private defendant may be treated as a state actor for § 1983 purposes; *to wit*:  "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and alteration omitted).

Here, Plaintiff has neither established that the Defendant meets the threshold tests outlined by the *Kach* court nor offered any evidence to show that Defendant, a private company, acted under color of state law when it denied Plaintiff's employment application.  Nonetheless, Plaintiff argues Defendant was a state actor because it "entered [into] a contract with School District of Philadelphia to provide substitute teachers."  [Pl.'s Br., ECF 70, at p. 10].  To support this argument, Plaintiff cites to an article ostensibly reporting that Defendant "was woefully inept in hiring substitute teachers and was eventually fired for inadequate performance."  *Id.*  The webpage is not attached to Plaintiff's brief and is no longer accessible via the URL Plaintiff provides.  Notwithstanding, taking Plaintiff's allegation regarding the existence of Defendant's contract with the School District as true, this fact alone does not support a finding that Defendant was a state actor under any of the three tests outlined by the Third Circuit.

Specifically, the question under the first test—the "public function" test—is whether the private entity performed a function that has been "traditionally the exclusive prerogative of the state."  *Mark v. Borough of Harboro*, 856 F. Supp. 966, 970–71 (E.D. Pa. 1994) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982).  The Supreme Court has repeatedly declined to deem

private entities state actors when they simply performed a public service. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 324 (1981) (public defender employed and funded by the state was not a state actor); *Jackson.*, 419 U.S. at 353 (electric company providing statutorily mandated public service was not a state actor). Importantly, in the education context, courts have rejected "public function" arguments where the defendant contracted with the state to provide an educational benefit. *See Rendell-Baker*, 457 U.S. at 840–41 (private school contracting with state for funding to educate special needs students was not a state actor); *Black by Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 710 (3d Cir. 1992) (contractor providing school bus program to state was not a state actor). Applying these precedents here, the fact that Defendant may have contracted with the School District to provide substitute teachers does not itself demonstrate that it "exercised powers that are traditionally the exclusive prerogative of the state." *Kach*, 589 F.3d at 646.

Under the second, "close nexus," test, a private entity may be considered a state actor where its activity and that of the state are connected such that the action of the private entity "may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351. The state must exert "overt, significant assistance" for the private action to be considered state action. *Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 540 (E.D. Pa. 2019) (citing *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994)). Here, there is no evidence suggesting the School District exerted any control or influence over Defendant, or vice versa. The possible existence of a contract between Defendant and the School District is insufficient to establish a "close nexus" for § 1983 purposes.

The third test for state action—the "symbiotic relationship" test—concerns whether the private entity and the state are "inextricably linked together." *Mark*, 856 F. Supp. at 975 (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715(1961)). Under this test, "neither extensive

financial assistance nor routine state regulation constitute[s] state action." *Id.*; *see also Jackson*, 419 U.S. at 358–89 (finding a private utility company that was heavily regulated by the state and enjoyed "at least a partial monopoly" in providing services was not a state actor).  In *Mark*, the district court found that a private entity that conferred a benefit upon the state was not a state actor, because the state had "no obligation or responsibility regarding the operation" of the private company. *Id.* at 976.  Similarly, here, Defendant assisted the School District in providing substitute teachers.  Plaintiff has provided no evidence suggesting the School District had any "obligation or responsibility" regarding Defendant's operation.  Thus, Defendant cannot be considered a state actor under the symbiotic relationship test.

In sum, the fact that Defendant contracted with the School District to provide substitute teachers does not itself establish Defendant was a state actor.  Because Plaintiff has failed to show that Defendant acted under color of state law when it did not hire Plaintiff, Defendant is entitled to summary judgment on Plaintiff's § 1983 claims.[12]

### § 1985 – Conspiracy to Interfere with Civil Rights

Plaintiff also claims Defendant is liable under 42 U.S.C. §§ 1985 and 1986.[13]  These sections provide a remedy for a conspiracy to deprive a person of civil rights and neglect to prevent

---

[12]    At Count IV, Plaintiff asserts a claim seeking injunctive and declaratory relief based on the same allegations underlying his claims for race discrimination (Counts I and II) and for failure to train/supervise (Count III).  This claim (Count IV) is dismissed for the reasons outlined in this Opinion.  In addition, Plaintiff asserts separate counts for judgment, damages, and punitive damages (Count V) and for a jury trial (Count VI).  Such "claims" are not cognizable as independent claims, but rather constitute forms of relief. As pled, these counts are dismissed.

[13]    In relevant part, § 1985 provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy,

a conspiracy, including "conspiracies predicated on 'racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).  Section 1985 protects against conspiracies to interfere with "constitutionally protected rights, privileges and immunities" by both private and state actors. *Brown v. Phillip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001).

To prevail on a conspiracy claim under § 1985 claim, the plaintiff must show the following: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons . . . of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Ridgewood Bd. of Educ.*, 172 F.3d at 253–54 (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)) (alteration omitted); *see also Griffin*, 403 U.S. at 102.  The plaintiff must present evidence demonstrating the existence of a conspiracy, its broad purposes, and the defendant's role in carrying out those purposes, or by submitting evidence from which an agreement to conspire may be inferred. *Barnes v. Commonwealth of Pa. Dep't of Corr.*, 706 F. Supp. 2d 593, 611–12 (M.D. Pa. 2010).

---

> whereby another is injured . . . , the party so injured or deprived may have an action . . . against any one or more of the conspirators.

42 U.S.C. § 1985(3).

In relevant part, § 1986 provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured . . . .

42 U.S.C. § 1986.

Again, Plaintiff does not present any evidence to support his claim that Defendant conspired to discriminate against him. *See Barnes*, 706 F. Supp. 2d at 611. While Plaintiff contends that Defendant entered into a contract with the School District of Philadelphia, the website he cites for that proposition is, as noted, inaccessible. Even assuming Plaintiff is correct about Defendant's business with the School District, that fact does not suggest that there existed a conspiracy to discriminate against Plaintiff. As Plaintiff has not produced sufficient evidence to support his allegations, Defendant is entitled to judgment on Plaintiff's §§ 1985 and 1986 claims.[14]

**CONCLUSION**

For the reasons stated, this Court finds that Plaintiff has not met his summary judgment burden under Rule 56 and has failed to "cite to particular parts of materials in the record" that would create genuine disputes as to material facts regarding essential elements of his claims. Therefore, Defendant's motion for summary judgment is granted, and judgment on all claims is entered in favor of Defendant. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[14]     *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980) ("[T]ransgressions of § 1986 by definition depend on a preexisting violation of § 1985 . . ."); *see also Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994); *Burnett v. Springfield Twp.*, 2014 WL 3109963, at *10 (E.D. Pa. July 8, 2014).